## Dalo, Jr., v. Bastress

*Albert E. Acker*, for plaintiff.

*D. W. Patterson*, for defendant.

McKAY, J., March 15, 1961.—Defendant has filed a petition to open a judgment entered by plaintiff against her by virtue of a power of attorney contained in a real estate dealer's listing agreement. The judgment represents a commission claimed by plaintiff for the sale of a

lot for defendant in the City of Sharon. The answer alleges that the commission is not due because the sale failed of completion. At a hearing, which was held November 28, 1960, the following facts were established.[1]

Prior to 1937, D. G. Bastress sold to William E. Caulfield and Virginia Caulfield, his wife, a lot in the City of Sharon, upon which they built a residence dwelling house known as 1282 Glenwood Drive. Immediately east of this property lay a relatively small corner lot known as lot no. 19 in the D. G. Bastress Elmhurst Plan of Lots No. 1 which was also owned by Bastress. Lot no. 19, as we shall hereafter refer to it, fronts 47 feet on Glenwood Drive, 103 feet on Service Avenue, and is rounded at the corner of the street intersection.

In 1937, Bastress sold lot no. 19 to the Caulfields under written articles of agreement for the sum of $750. Both copies of the agreement were subsequently mislaid by the parties but its existence and terms were not contested. The agreement was a loose one containing no stipulation as to time or amounts of payments, but during Bastress's lifetime the Caulfields made sporadic payments under it totaling $600 and improved and cared for the lot. After the death of Bastress his widow, executrix and sole devisee, Alice S. Bastress, defendant in the present action, kept up the taxes on lot no. 19 and also paid assessments for paving and curbing levied against it by the City of Sharon.

In 1957, defendant's business dealings were handled by her son, Norman Bastress, who acted as her agent

[1] A portion of the history which follows was not specifically developed at the hearing. However, it is familiar to all parties as a result of the recent hearing of a companion case, an action of ejectment relating to this same lot brought by Alice S. Bastress v. William E. Caulfield and Virginia Caulfield, at no. 19, September term, 1959, decided May 24, 1960.

in all matters relating to the lot. Although she and her son knew of the existence of the agreement with Caulfields and the equity which the latter had in lot no. 19, they undertook to sell it in the spring of 1957 under the assumption that it was defendant and not Caulfields who owned it. This was done notwithstanding, under the law of Pennsylvania, when an article of agreement has been executed, the purchaser under the agreement is recognized as the equitable and real owner of the land and the seller and his successors to the legal title merely have the right to collect the balance due under the agreement.

On March 11, 1957, defendant placed the lot in the hands of plaintiff, a real estate broker, authorizing him to sell it for $2,000 and agreeing to pay him a commission of 10 percent of the selling price if he obtained a purchaser for it. Plaintiff found purchasers in the persons of Allen D. Wilder and Lelah D. Wilder, his wife, for $1,750, which was acceptable to defendant, and on April 11, 1957, an agreement[2] was entered into by defendant and the Wilders for the sale of lot no. 19 for that amount. Because of certain zoning restrictions which called for a 15 foot building line on Service Avenue, the agreement was made "Subject to buyers being granted a zoning variance of 1-8-2' to accommodate present bldg. plans." This provision was apparently for the benefit of the Wilders who had already obtained an architect who had designed a house 25 feet wide. The Wilders would require this variance as to the building line in order to build the house which they had planned.

While the proceeding to obtain a variance was pending, Caulfields asserted their claim to ownership under

[2] Both the listing agreement of March 11, 1957, and the sale agreement of April 11, 1957, are silent as to the Caulfield equity in the lot. Both also state that "no verbal agreements, statements, representations, promises or conditions of any kind have been made or will be recognized unless noted hereon in writing."

the articles of agreement of 1937. Wilders learned of this and on advice of counsel, refused to proceed further under their purchase agreement with defendants. Instead, they bought another lot and built their house on it.

On June 14, 1957, defendant filed the action of ejectment against the Caulfields to establish title to lot no. 19 to which we have referred.[3] The case was tried by the court without a jury and resulted in a finding that Caulfields had a good title provided they paid defendant the balance due under the old agreement with interest from the date of D. G. Bastress's death and reimbursed her for the taxes and paving assessments which she had paid on the lot, a total of $1,290.79. We understand that this sum has been paid by Caulfields and that defendant has executed a deed to them for the lot.

On August 22, 1960, plaintiff entered judgment for $210.99 [4] under the power of attorney contained in the listing agreement and the present petition to open followed.

The primary question in this proceeding to open judgment is whether defendant has set forth in her petition a valid defense to plaintiff's claim and has supported it by evidence at the hearing.

The principal contention of defendant is that she is not liable to pay the commission which plaintiff claims for selling her lot because the consummation of the sale to the Wilders was prevented by the order of the court which terminated her ejectment proceeding against the Caulfields.

In support of her position, she cites the rule of law that where a proper judicial order prevents performance of a contract without the promisor's fault, the

---

[3] See note 1, supra.

[4] At the hearing the amount of the judgment was questioned whereupon plaintiff agreed to correct it to the sum that is found by both counsel to be actually due.

obligation to perform is discharged: Olyphant Borough School District v. American Surety Co. of New York, 322 Pa. 22.

The principle relied upon is obviously inapplicable to the instant case for two reasons. First, the rule would apply, if at all, not to defendant's contract with plaintiff to pay him a commission if he found a buyer for the lot, but to the contract with Wilders to purchase the lot. It was the Wilder contract, not the Dalo listing agreement whose performance was prevented by the order of court.

Second, and more important, defendant's inability to perform was due to her own fault. At the time she entered into the contract with Wilders to sell them her lot, she had a valid contract outstanding which bound her to sell it to Caulfields. The order of court upon which she relies for relief from responsibility was merely the judgment which terminated her ejectment action against Caulfields, a judgment which was compelled by the fact that her husband, as predecessor in title, had agreed to sell the lot to a prior purchaser. When defendant agreed in writing to sell the lot to Wilders she no longer owned the lot. Hence, by her own conscious act she entered into an agreement which she did not have the power to perform.

Defendant next contends that plaintiff's commission did not become due because, under the Wilder agreement, a variance was to be obtained by the purchaser and this was not done.

Again it should be emphasized that defendant is not contesting a claim by Wilder but by Dalo, the real estate broker who sues for his commission. It makes no difference whether Wilder obtained the variance or not so far as the validity of Dalo's claim is concerned. Even if it did, however, the reason would have no merit because when it developed that defendant could not convey the good title which her agreement called for,

there was no obligation upon Wilder to proceed further under the contract to obtain a variance, a procedure which would be utterly meaningless and futile. As has been often said, the law does not require anyone to do a vain and useless thing.

Finally, defendant suggests that Dalo took the lot for sale "subject to any claim of Caulfields," by which, we assume, is meant that there was an oral agreement contemporaneous with the listing agreement to the effect that if Caulfields' claim was later held to be valid, Dalo was not to receive his commission.

The difficulty with this contention is that no evidence was adduced at the hearing to support it. On the contrary, the testimony of defendant's agent, Norman Bastress, is that he did not regard the Caulfield claim as valid and that he directed Dalo to ignore it, while Dalo testified that he did not even know of the existence of Caulfields' claim of title to the lot when he accepted the lot for sale in March 1957, nor even when Wilders agreed to buy it in April. He said that the Caulfield claim came to light in July or August of 1957 when Wilders were undertaking to obtain a variance from the zoning ordinance.

Even if defendant had evidence of such an oral agreement, however, it could not be received in evidence under the parol evidence rule.

There is no rule of law more firmly established in Pennsylvania than the parol evidence rule which holds that in the absence of fraud, accident or mistake where the parties have deliberately put their engagements in writing, the writing is not only the best but the only evidence of their agreement: Forbes Road Union Church and Sunday School v. Salvation Army, 381 Pa. 249. The rule is more than one of mere evidence. It is a rule of substantive law: Lefkowitz v. Hummel Furniture Co., 385 Pa. 244. The rule is particularly applicable to the present case for the reason that the

agreement between plaintiff and defendant specifically provides that "no verbal agreements, statements, representations, promises or conditions of any kind have been made or will be recognized unless noted hereon in writing."

Hence, this case resolves itself into a simple one in which defendant engaged plaintiff to sell a lot at a commission of 10 percent of the selling price, the latter obtained a purchaser for $1,750 but, due to a prior sale to another, defendant was unable to convey a good title. Plaintiff having done all that he agreed to do is entitled to his commission.

It follows that defendant has not shown that she has a good defense and that plaintiff's judgment should not be disturbed.

### Order

Now, March 15, 1961, after hearing and argument of counsel, it is ordered that the rule to open judgment in the above-entitled case is discharged.

### Exception

Now, March 15, 1961, the above-named defendant excepts to the above order and an exception is sealed.